**In re FENOFIBRATE PATENT LITIGATION.**

**No. 11 MDL 2241(JSR).**

United States District Court,
S.D. New York.

Dec. 27, 2012.

Order Denying Injunction Jan. 7, 2013.

**709**

Amin S. Kassam, Joseph Vecchione De-Marco, DeVore & DeMarco, L.L.P., Philip Laurence Hirschhorn, Buchanan Ingersoll & Rooney P.C., New York, NY, Christopher Thomas Griffith, Jessica M. Tyrus, Kate M. Lesciotto, Robert F. Green, Robert Fritz Green, Leydig, Voit & Mayer, Ltd., Chicago, IL, Jamaica P. Szeliga, Leydig Voit & Mayer Ltd., Washington, DC, Brian P. O'Shaughnessy, Buchanan Ingersoll & Rooney P.C., Alexandria, VA, for Plaintiffs/Counter Defendants.

Charles B. Klein, John K. Hsu, Winston & Strawn LLP, Robert J. Scheffel, Wiley Rein LLP, Washington, DC, Joel M. Wallace, Winston & Strawn LLP, Michael A. Krol, Steven E. Feldman, Husch Blackwell LLP, Chicago, IL, Jeffrey Alan Cohen, Flaster/Greenberg P.C., Cherry Hill, NJ, Sherry L. Rollo, Husch Blackwell Sanders, LLP, Kansas City, MO, for Defendants.

Benjamin A. Katzenellenbogen, Knobbe Martens Olson & Bear LLP, Irvine, CA,

Luke A. Connelly, Winston & Strawn LLP, New York, NY, for Defendants/Counter Claimants.

Jennifer Cozeolino Tempesta, Baker Botts LLP, New York, NY, for Counter Defendant.

### MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

In this multi-district litigation, plaintiff Lupin Atlantis Holdings S.A. ("Lupin"), the owner of the approved New Drug Application for the prescription drug ANTARA and the licensee of U.S. Patent No. 7,101,574 B1 (the "'574 patent") and U.S. Patent No. 7,863,331 B2 (the "'331 patent"),[1] alleges that defendants Mylan Inc. and Mylan Pharmaceuticals Inc. (collectively "Mylan") and Apotex Inc. and Apotex Corp. (collectively "Apotex") infringed both patents by seeking federal regulatory approval to manufacture generic versions of ANTARA.

The defendants bring four summary judgment motions, Mylan and Apotex separately move for summary judgment of noninfringement of both patents. Mylan and Apotex jointly move for summary judgment of invalidity of the '574 patent, and Mylan moves for summary judgment of invalidity of the '331 patent. After careful consideration of the parties' written and oral submissions, the Court concludes that the defendants' motions for summary judgment of noninfringement should be granted. Having granted those motions, the Court dismisses as moot defendants' counterclaims for invalidity, and therefore

---

1. Ethypharm S.A. ("Ethypharm") is the owner and licensor of the patents, but it is not asserting a claim of patent infringement against Apotex or Mylan. Under the terms of the license between Ethypharm and Lupin, Lupin has the right to enforce the '574 and '331 patents in the event of an abbreviated new drug application by a third party. Mylan Compl. ¶ 31; Apotex Compl. ¶ 31. Ethypharm's involvement in this case is limited to its opposition to the defendants' motions for summary judgment of invalidity of the patents. As discussed below, however, the Court does not reach the question of the invalidity of these patents.

the Court does not reach the defendants' related motions for summary judgment of invalidity. *Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1468 (Fed.Cir. 1998) ("[A] district court has discretion to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement").

Under Federal Rule of Civil Procedure 56(a), a party seeking summary judgment must demonstrate that there is "no genuine dispute as to any material fact" and that the party is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[S]ummary judgment will not lie ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The pertinent facts, viewed in the light most favorable to the non-moving party, are as follows. The two patents concern an active ingredient called fenofibrate, a chemical that treats high cholesterol and triglycerides. *See* Declaration of Natalie Clayton, Oct. 21, 2011 ("Clayton Decl."), Ex. 1 ("'574 Patent") at 1:9–11; Clayton Decl. Ex. 2 ("'331 Patent") at 1:12–14. The '574 patent covers certain fenofibrate formulations, and the '331 patent covers a particular method for using those formulations. *See* '574 Patent; '331 Patent.

The '574 patent discloses specific fenofibrate formulations that are provided as capsules containing granules. '574 Patent at 2:16–18. Each granule consists of a neutral microgranule surrounded by an active layer that contains micronized fenofibrate, binding cellulose derivative,[2] and a surfactant.

Although the '574 patent consists of thirty-four claims, claim 19 is the only claim from the '574 patent at issue in this case. Claim 19 states, in its entirety:

> A pharmaceutical composition in the form of granules, wherein each granule comprises a neutral microgranule on which is a composition comprising: micronized fenofibrate, a surfactant, and a binding cellulose derivative as a solubilization agent, wherein the mass ratio of said fenofibrate to said binding cellulose derivative is between 5/1 and 15/1.

'574 Patent at 11:30–35. Therefore, Claim 19 makes clear that the '574 patent is directed toward particular mass ratios of fenofibrate and binding cellulose derivative. Specifically, the claim states that the ratio of fenofibrate to binding cellulose derivative must be "between 5/1 and 15/1." *Id.*

The '331 patent was filed as a continuation-in-part of the '574 Patent. The '331 patent's claims set forth a method of decreasing "food effect"[3] when treating patients, enabling the composition to be effective even if the patient has not eaten food prior to the administration of the drug. '331 Patent at 2:58–67. The '331 patent consists of four claims, one of which, claim 1, is independent. Claim 1 is the only claim under the '331 patent at issue here. Like Claim 19 of the '574 patent, Claim 1 states that the ratio of fenofibrate to binding cellulose derivative must be "between 5/1 and 15/1." In full, Claim 1 states:

---

2. HPMC is the preferred type of binding cellulose derivative used in the formulations. '574 Patent at 2:13–15. The parties use the terms HPMC and binding cellulose derivative interchangeably, but for the sake of simplicity, the Court will use the term "binding cellulose derivative" to refer to both terms.

3. "Food effect" is a phenomenon by which fenofibrate is more easily absorbed after the ingestion of a high fat meal. '331 Patent at 1:29–34.

A method of reducing food effect when treating hypertriglyceridemias and/or hypercholesterolemias and/or hyperlipidemias in a patient in need thereof comprising administering to said patient a therapeutically effective amount of a pharmaceutical composition comprising micronized fenofibrate, a surfactant and hydroxypropylmethylcellulose [HPMC], wherein said composition is in the form of granules comprising:

(a) a neutral core; and

(b) an active layer, surrounding the neutral core;

wherein said neutral core comprises a sugar or a sugar mixed with starch; said active layer comprises the micronized fenofibrate, the surfactant, and the binding cellulose derivative; and wherein the mass *ratio of said fenofibrate to said HPMC is between 5/1 and 15/1,* and said HPMC represents between 5 and 12% by weight of the composition.

*Id.* at 16:48–67 (emphasis added).

Mylan and Apotex each filed an Abbreviated New Drug Application ("ANDA") with the Food and Drug Administration seeking regulatory approval for generic versions of ANTARA. Mylan's ANDA includes two generic dosages of ANTARA: a 43mg ANDA product and a 130 mg ANDA product (collectively "Mylan's ANDA Products"). Mylan's Statement of Undisputed Facts in Support of its Motion for Summary Judgment of Noninfringement (Mylan 56.1) ¶ 1; Lupin's Response to Mylan's Statement of Undisputed Facts ("Lupin Resp. to Mylan 56.1") ¶ 1. Apotex's ANDA also contains two generic dosages of ANTARA: a 43mg ANDA product and a 130mg ANDA product (collectively "Apo-tex's ANDA Products"), Apotex Compl. ¶¶ 7, 24.

The Court turns first to Mylan's motion for summary judgment of noninfringement of the '574 and '331 patents. Lupin presses only literal infringement; it does not assert infringement under the doctrine of equivalents. In order for a product to literally infringe a patent, "each limitation of the claim must be met by the accused device *exactly,* any deviation from the claim precluding a finding of infringement." *Lantech, Inc. v. Keip Mach. Co.,* 32 F.3d 542, 547 (Fed.Cir.1994) (emphasis added). At summary judgment, the accused infringer has the initial burden of production: it must present evidence that would "preclude a finding of infringement" or show "that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.,* 271 F.3d 1043, 1046 (Fed.Cir.2001). If this initial burden is met, the burden shifts to the patent holder to "designate specific facts showing that there is a genuine issue for trial," *Id.*

Mylan asserts that summary judgment of noninfringement of both patents should be granted because its ANDA products do not contain a ratio of fenofibrate to binding cellulose derivative that falls between 5/1 and 15/1. It is undisputed that the only claims asserted here—Claim 19 of the '574 patent and Claim 1 of the '331 patent—state that the ratio of fenofibrate to binding cellulose derivate in the final composition must be "between 5/1 and 15/1." Mylan 56.1 ¶ 2; Lupin Resp. to Mylan 56.1 ¶ 2. It is also undisputed that Mylan's ANDA Products contain a mass ratio of fenofibrate to binding cellulose derivative of no more than 4.7/1.[4] Mylan

---

4. Mylan's 43mg ANDA product contains 43mg of fenofibrate and 9.16 mg of binding cellulose derivate, and the 130mg formulation contains 130mg of fenofibrate and 27.7 mg of binding cellulose derivative. Mylan 56.1 ¶¶ 9–12; Lupin Resp. to Mylan 56.1 ¶¶ 9–12. Lupin states that these products have a fenofibrate to binding cellulose derivative ratio of 4.7/1. Lupin Resp. to Mylan 56.1 ¶¶ 14, 16.

56.1 ¶¶ 14, 16; Lupin Resp. to Mylan 56.1 ¶¶ 14, 16. Therefore, the Court must determine whether, for purposes of these patents, 4.7/1 is between 5/1 and 15/1. This question is "amenable to summary judgment" because the parties do not dispute any facts about the accused product; rather the parties simply "disagree over possible claim interpretations," specifically whether 4.7/1 falls between 5/1 and 15/1. *See Gen. Mills, Inc. v. Hunt–Wesson, Inc.,* 103 F.3d 978, 983 (Fed.Cir.1997).

Lupin argues that "4.7/1 does, indeed, fall between 5/1 and 15/1" because 4.7 rounds to 5. Lupin's Memorandum of Law in Opposition to Mylan's Motion for Summary Judgment of Noninfringement ("Lupin Opp'n to Mylan Mem.") at 12. The Court disagrees. The Federal Circuit has held that "the overall phrase—a quantity between ____ and ____—is a construction that implies a specific range.... It does not imply a range between two values which are themselves ranges." *U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd.,* 505 F.3d 1371, 1376 (Fed.Cir.2007) (internal citations and quotation marks omitted). This is especially true here where Lupin is asserting only literal infringement; therefore, "each limitation of the claim must be met by the accused device exactly." *Lantech,* 32 F.3d at 547.

In this case, the "key word is 'between,'" *see Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.,* 214 F.3d 1302, 1307 (Fed.Cir.2000), and, Lupin's proposed definition of "between 5/1 and 15/1" does not comport with the ordinary meaning of that phrase. During claim construction, Lupin did not argue that the phrase "between 5/1 and 15/1" should be construed to embody anything other than its ordinary

meaning. As the Federal Circuit concluded in *Elekta,* the ordinary meaning of "between" is "in the time, space or interval that separates." *Id.* at 1308 (quoting Webster's New World Dictionary 947 (3d ed.1988)). The space or interval that separates 5 and 15 includes numbers greater than or equal to 5, and lesser than or equal to 15.

Lupin asks the Court to round 4.7 to 5 so that 4.7 falls between 5 and 15. But even if such rounding were permissible despite the patents' use of the phrase "between," Lupin has not demonstrated that the standard industry practice in this circumstance is to round. In *San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n,* 161 F.3d 1347, 1361 (Fed.Cir. 1998), in a case that did not involve the term "between," the Federal Circuit accepted rounding only after the plaintiff demonstrated that the standard industry practice was to round to the nearest integer. Here, by contrast, the named inventors of the patent-in-suit stated that the standard industry practice was to record the ratio to the nearest hundredth. Clayton Decl. Ex. 4 at 53:4–54:16; 164:1–165:5.

Moreover, here, as in *Jeneric/Pentron, Inc. v. Dillon Co., Inc.,* 205 F.3d 1377 (Fed.Cir.2000), the inventors wrote the claims narrowly in order to distinguish them from the prior art. In *Dillon,* the Federal Circuit held that the plaintiffs "may not rely on the precise range of the claims to distinguish itself from prior art during prosecution and then later construe the ranges more broadly during an infringement action." *Id.* at 1382; *see also Viskase Corp. v. Am. Nat'l Can Co.,* 261 F.3d 1316, 1322 (Fed.Cir.2001). When the

Mylan states that the ratio should be classified as 4.69/1 or 4.695/1, Mylan 56.1 ¶¶ 14, 16, but readily admits that this dispute is irrelevant to the disposition of this motion if the Court concludes that 4.7 is not between 5 and 15.

Reply Memorandum in Support of Mylan's Motion for Summary Judgment of Noninfringement ("Mylan's Reply Mem.") at 2 n. 1, 10.

patentee added claim 19 to the '574 patent, it distinguished the prior art (the "*Stamm* patent"), by explaining that "the ratio fenofibrate/binding cellulose derivative of the claimed composition is between 5/1 and 15/1; while the ratio fenofibrate/hydrophilic polymer of Stamm is between 1/10 and 4/1." Clayton Decl. Ex. 5 at 15. The patentee used similar language during the prosecution of the '331 patent. Clayton Decl. Ex. 6 at 4–5. Lupin concedes that "the patentees in the present instance distinguished the claimed range of 'between 5/1 and 15/1' over the range disclosed in the prior art (*i.e.,* 1/10 to 4/1)." Lupin Opp'n to Mylan Mem. at 13. Under Lupin's theory, however, if a ratio with a maximum bound of 4/1 includes 4.49 by virtue of rounding, and a ratio with a minimum bound of 5/1 includes 4.51, again by virtue of rounding, then the difference between the two patents would have been miniscule. It is unlikely that this two-hundredths difference would have been enough for the patent examiner to award the patent to the patentee. Because the patentee construed the claim narrowly to distinguish the prior art, Lupin cannot now seek to broaden the claim through rounding, not least because such rounding would not comport with standard industry practice.

Lupin argues that it is not trying to "broaden the claimed range of 'between 5/1 and 15/1,'" but "merely acknowledging the uncertainty associated with the numbers 5 and 15" because those numbers contain only one significant figure. Lupin Opp'n to Mylan Mem. at 6. Characterizing the dispute this way does not eliminate the fact that Lupin's interpretation would serve to change the range covered by the patent from 5/1–15/1 to the significantly broader range of 4.5/1–15.4/1. This would increase the range of composition ratios covered by the patents by nearly ten percent. The claim limitations do not include any approximation language such as "about" or "approximately" that would indicate that the ratios should be read broadly. *See Philips,* 505 F.3d at 1376. In *Dillon,* the Federal Circuit held that "[w]ithout broadening words that ordinarily receive some leeway," the invention's "components should be limited to the precise ranges set forth therein." 205 F.3d at 1381.[5]

For all of these reasons, the Court grants Mylan's summary judgment motion for noninfringement of both the '574 and the '331 patents: the final compositions in Mylan's ANDA Products contain a ratio of no more than 4.7/1, and this ratio does not fall between 5/1 and 15/1 as required by the patents.[6]

■ The Court turns next to Apotex's motion for summary judgment of noninfringement. Apotex argues that its ANDA product does not infringe the patents because it does not include, among other things, the binding cellulose derivative required by the '574 patent or the HPMC required by the '331 patent. In its Rule 56.1 Statement, Lupin admits that the material it has received "appears to indicate that Apotex's ANDA Products, as originally submitted to the FDA" does not include a binding cellulose derivative or HPMC. Lupin's Response to Apotex's Rule 56.1 Statement ("Lupin Resp. to Apotex 56.1")

---

**5.** Although it is not dispositive, it is worth noting that every example in the patents discloses a ratio greater than 5/1. '574 Patent at 3–10; '331 patent at 6–12.

**6.** In light of this conclusion, the Court need not reach Mylan's alternative argument that

its product does not infringe Claim 19 of the '574 patent because *each and every granule* of its product does not contain a ratio of fenofibrate to binding cellulose of between 5/1 and 15/1. *See* Memorandum in Support of Mylan's Motion for Summary Judgment of Noninfringement ("Mylan Mem.") at 15–16.

¶¶ 31, 35. Moreover, in its brief, Lupin does not argue that Apotex's ANDA Products contain a binding cellulose derivative or HPMC. Instead, Lupin asserts that Apotex's motion is "simply premature." Lupin's Memorandum of Law in Opposition to Apotex's Motion for Summary Judgment of Noninfringement ("Lupin Opp'n to Apotex Mem.") at 1.

■ The relevant statute, 35 U.S.C. § 271(e), creates an artificial act of infringement so that the Court must determine whether the manufacture of the product proposed in the ANDA would infringe on the patent, even though the ANDA product has not yet been sold. *See Eli Lilly & Co. v. Medtronic, Inc.,* 496 U.S. 661, 678, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990). The Federal Circuit has instructed that courts should ordinarily not look beyond the four corners of the ANDA. *In re Brimonidine Patent Litigation,* 643 F.3d 1366, 1378 (Fed.Cir.2011). This is because drug manufacturers are only allowed to sell those products that comport with the ANDA's description of the drug. *Abbott Labs. v. TorPharm, Inc.,* 300 F.3d 1367, 1373 (Fed.Cir.2002).

Apotex argues that it provided Lupin with "details of the formulation of Apotex's products from Apotex's ANDA" at the beginning of the case, specifically its "complete and current ANDA formulation and a flow chart detailing its manufacturing process." Memorandum in Support of Apotex's Motion for Summary Judgment of Noninfringement ("Apotex Mem.") at 4. Lupin responds that these were two "cherry-picked" pages from Apotex's ANDA. Lupin Opp'n to Apotex Mem. at 1. Lupin asserts that it repeatedly requested a full copy of Apotex's ANDA, and that Apotex did not produce the full ANDA until the last day of discovery. *Id.* at 1–2.

■ Although Lupin has now received the full ANDA, Lupin argues that Apotex's 130mg ANDA product has more sodium lauryl sulfate than will be allowed by the FDA,[7] and therefore, "it seems quite likely that the FDA will request, or perhaps already has requested, that Apotex adjust the formulation of its ANDA Products." Lupin Opp'n to Apotex Mem. at 3. Lupin, however, lacks standing to challenge whether Apotex's ANDA Products meet the FDA's regulatory guidelines, because there is no private right of action under the Federal· Food, Drug, and Cosmetics Act. *Minnesota Mining & Mfg. v. Barr Labs.,* 289 F.3d 775, 783 (Fed.Cir.2002). The filer of an ANDA has an obligation to inform the court and the parties of any material amendment to the ANDA, *Biovail Corp. Int'l v. Andrx Pharmaceuticals, Inc.,* 239 F.3d 1297, 1304 (Fed.Cir.2001), but Apotex's counsel has Procedure 56(d) seeking additional time for discovery or other appropriate relief.[9]

Instead of taking either of those steps, Lupin simply opposed Apotex's motion for summary judgment on the ground that it was "premature." The motion is not "premature," however, because 1) it was timely made according to the Court's previously-set schedule, 2) Lupin did not move to compel discovery, and 3) Lupin did not file a Rule 56(d) affidavit seeking a delay in the discovery or summary judgment schedules. Because there is no genuine dispute of material fact as to the alleged

---

7. Lupin does not assert that Apotex's 43mg ANDA product also suffers from this problem. *See* Lupin Opp'n to Apotex Mem. at 3.

9. Federal Rule of Civil Procedure 56(d), formerly Rule 56(f), states that "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed.R.Civ.P. 56(d).

infringement, the Court grants Apotex's motion for summary judgment of noninfringement as to Apotex's ANDA Products as presently constituted.

For the foregoing reasons, Mylan's motion for summary judgment of noninfringement is granted, and Apotex's motion for summary judgment of noninfringement is also granted. The defendants' counterclaims for invalidity of the patents are dismissed as moot, and therefore, the Court does not reach the defendants' motions for summary judgment of invalidity of the patents. The Clerk of the Court is directed to enter judgment in favor of defendants, close this case, and notify the Judicial Panel on Multidistrict Litigation that this litigation is now completed.

SO ORDERED.

### MEMORANDUM ORDER

In this multi-district litigation, plaintiff Lupin Atlantis Holdings S.A. ("Lupin"), the owner of the approved New Drug Application for the prescription drug ANTARA and the licensee of U.S. Patent No. 7,101,574 B1 (the "'574 patent") and U.S. Patent No. 7,863,331 B2 (the " '331 patent"),[1] alleged that defendants Mylan Inc. and Mylan Pharmaceuticals Inc. (collectively "Mylan") and Apotex Inc. and Apotex Corp. (collectively "Apotex") infringed both patents by seeking federal regulatory

approval to manufacture generic versions of ANTARA. On November 29, 2012, while motions for summary judgment were pending, the Food and Drug Administration ("FDA") granted tentative approval of the Abbreviated New Drug Application ("ANDA") filed by defendant Mylan for its generic formulation of ANTERA. On December 27, 2012, this Court granted defendants' motions for summary judgment on the issue of noninfringement and directed the clerk to enter final judgment. The next day, Lupin moved for an interim injunction under Rule 62(c), Fed.R.Civ.P., to prevent Mylan from marketing a generic formulation of ANTERA while this Court's summary judgment decision is appealed.[2] The same day, the Court issued a temporary injunction enjoining both Mylan and Lupin from marketing any generic version of ANTERA for one week while Lupin and Mylan briefed Lupin's motion. Having now received and considered that briefing, the Court denies Lupin's motion and lifts the temporary injunction.

In light of the expedited nature of the instant motion, the Court assumes familiarity with the facts and procedural background of this case. It is well established that in determining whether to issue an injunction in patent cases, courts consider four factors: (1) whether the movant has shown a likelihood of success on the

1. Ethypharm S.A. ("Ethypharm") is the owner and licensor of the patents, but it is not asserting a claim of patent infringement against Apotex or Mylan. Under the terms of the license between Ethypharm and Lupin, Lupin has the right to enforce the '574 and '331 patents in the event of an abbreviated new drug application by a third party. Mylan Compl. ¶ 31; Apotex Compl. ¶ 31.

2. Lupin is seeking an injunction rather than a simple stay of judgment pending appeal in order to avoid the situation that occurred in *Sanofi–Aventis U.S. LLC v. Sandoz, Inc.*, No. 2009–1427, 2009 WL 7365766 (Fed.Cir. Aug. 13, 2009). In that case, the Federal Circuit

issued a stay of judgment of noninfringement pending appeal, but the FDA nevertheless granted final approval of an ANDA, allowing a generic manufacturer to go to market. *Id.* at *1–2 (Moore, J., concurring). The Hatch–Waxman Act provides that the FDA may approve an ANDA "effective on ... the date on which the court enters judgment reflecting the decision" that a patent is not infringed, 21 U.S.C. § 355(j)(5)(B)(iii)(I), but the FDA took the position that the stay did not affect its authority to approve the ANDA. 2009 WL 7365766, at *1–2. In this case, Mylan expects the FDA to issue final approval for Mylan's generic version of ANTERA any day now. Decl. of Anthony Mauro, ¶ 6.

merits, (2) whether the movant will suffer irreparable harm if the injunction is not granted, (3) whether the "balance of hardships" tips in the movant's favor, and (4) the public interest. *See Abbott Labs. v. Andrx Pharm., Inc.*, 473 F.3d 1196, 1200 (Fed.Cir.2007). These factors, however, are not equally important; "the first two ... are the most critical," *NSK Corp. v. U.S. Int'l Trade Comm'n*, 495 Fed.Appx. 51, 52–53 (Fed.Cir.2012), and "a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits." *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed.Cir.2004). Here, Lupin has failed to demonstrate that it is likely to prevail on the merits on appeal, and its motion is denied for that reason. The Court thus need not address the remaining factors.

Regarding Lupin's likelihood of success on the merits, the Court granted summary judgment of non-infringement for Mylan because the patents-in-suit claim drug formulations with a particular ratio—namely, a mass ratio of fenofibrate to binding cellulose derivate—of "between 5/1 and 15/1," while the allegedly infringing formulation has a ratio of 4.7/1, and 4.7 is not "between 5/1 and 15/1." Lupin argues that this conclusion was erroneous for four reasons.

First, Lupin argues that the Court erred in relying on *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302 (Fed.Cir.2000), because that case is factually inapposite. The Federal Circuit in *Elekta* held that the ordinary meaning of "between" is "in or through the space that separates (two things)," *id.* at 1307 (quoting Webster's New World Dictionary 134 (3d ed.1988)),[3] and this Court cited it in support of the conclusion that here, "between 5/1 and 15/1" means "numbers greater than or equal to 5, and lesser than

or equal to 15." Summ. J. Mem. Order at 8. Lupin contends that *Elekta* is distinguishable because in that case, the court was construing the claim term "only within a zone extending between latitudes 30°–45°," and comparing it to an accused infringing device that encompassed "latitudes ranging from 14° to 43°." 214 F.3d at 1304–05. Thus, unlike here, *Elekta* involved an accused device whose range overlapped with the claimed range, and also involved a claim term that included the exclusionary word "only."

Lupin made this same argument, nearly verbatim, in its summary judgment briefing, and thus the Court already considered and rejected it in its summary judgment order. In any event, the factual differences Lupin identifies do not alter the *Elekta* court's common-sense interpretation of the ordinary meaning of the word "between." Indeed, it is hard for the Court to imagine how a proficient English speaker could understand the word "between" to mean anything other than "in the time, space or interval that separates." Summ. J. Mem. Order at 8. That is precisely how the Court would interpret this term even in the absence of on-point Federal Circuit precedent.

Second, Lupin argues that the Court erred in determining that Lupin failed to establish that it was industry practice to round the relevant ratios to the nearest integer. Lupin points to testimony from its expert, Professor Klibanov, who opined that a person of ordinary skill in the art would view the number "5" alone as denoting an "uncertain[ ]" quantity "anywhere between 4.5 and 5.4." Decl. of Kate M. Lesciotto, Ex. G at 221:6–14. Lupin further contends that the Court inappropriately relied on testimony from the named inventors of the patents-in-suit that indus-

---

**3.** The Court notes that its summary judgment opinion, while accurately characterizing the Federal Circuit's holding, inaccurately transcribed this quotation.

try practice was to round mass ratios to the nearest hundredth, because that testimony concerned scientific recordkeeping practices, and not how a person of ordinary skill in the art would understand the claimed ratio of "5/1." Lupin further points to an unpublished decision by a magistrate judge in which the parties agreed that rounding was industry practice. *See Johnson Matthey Inc. v. Noven Pharm., Inc.*, No. 2:07–CV–260–CE, 2009 WL 2208214, at *5 (E.D.Tex. July 21, 2009).

Again, the Court considered and rejected these arguments in its summary judgment order. As the Court previously explained, the inventors' testimony shows that to round the accused formulation's ratio of 4.7/1 to 5/1 would be contrary to industry practice, and therefore contrary to the Federal Circuit's decision in *San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n*, 161 F.3d 1347, 1361 (Fed.Cir.1998).

As to whether the claimed "5/1" ratio actually encompasses values down to 4.5/1, Lupin fails to appreciate that the term "between 5/1 and 15/1" is a claim limitation that was added during prosecution to distinguish prior art that had claimed ratios between 1/10 and 4/1. The patentee easily could have curtailed the limiting effect of this claim term by adding a word like "about" or "approximately," or simply by expressly claiming any ratio down to "4.5/1." But the patentee chose not to do so. To the contrary, the patentee expressly represented to the patent examiner during prosecution that the prior art range does not "abut[ ]"—*i.e.* border upon—"the claimed invention." Decl. of Natalie C. Clayton, Ex. 9, at 13; *see also id.* ("[N]or do the ranges of the art abut the claimed ranges. Rather, both the claimed ranges are substantially outside those of the reference."). The Federal Circuit has held that a patentee "may not rely on the precise ranges of the claims to distinguish itself from prior art during prosecution and then later construe the ranges more broadly during an infringement action." *Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1382 (Fed.Cir.2000); *see also Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1322(Fed.Cir.2001).

In its third argument, Lupin contends that *Dillon* and *Viskase* are distinguishable. According to Lupin, *Dillon* is inapt because there the claimed and prior art ranges were "nearly identical or overlapping," 205 F.3d at 1382, and *Viskase* is inapt because there the prosecution history also included discussion of particular numbers of significant figures, 261 F.3d at 1321–22. But Lupin misses the point. These factual distinctions cannot erase the basic propositions of patent law for which the Court cited these cases—namely, (1) that a patentee cannot disclaim subject matter during prosecution and then reclaim it in a subsequent infringement action, and (2) that the foregoing principle applies equally to claimed ranges and numerical values as it does to any other subject matter.

Finally, Lupin argues that this Court erred in determining that under Lupin's reading of the claims, the difference between the claimed ratio of 5/1 and the prior art ratio of 4/1 would actually only be the difference between 4.51/1 and 4.49/1, and that such a difference of only two-hundredths is unlikely to have been sufficient to distinguish the prior art. Lupin suggests that the Court "inappropriate[ly] . . . assume[d] that the examiner had additional reasons for allowing the patent that are not set forth in the prosecution history," Lupin Br. at 12, but that is simply mistaken. As explained, the patentee expressly represented to the patent examiner that the claimed ratio did not "abut" the ratio in the prior art. In other words,

during prosecution the patentee itself shared the Court's doubts that the patent examiner would allow a patent that differed from the prior art only minimally, and sought to allay those doubts through an express representation. Lupin cannot now avoid the limiting implications of that representation.

Accordingly, for the foregoing reasons, as well as those set forth in the Court's summary judgment order, Lupin has failed to demonstrate a likelihood of success on the merits of its appeal. Lupin's emergency motion for an injunction pending appeal is therefore denied, and the temporary injunction issued on December 28, 2012, is fully vacated.

SO ORDERED.